IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SANDRA ENID LOPEZ, | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Acting Commissioner of Social Security, | : | |
| Defendant. | : | No. 19-1547 |

## MEMORANDUM OPINION

**LINDA K. CARACAPPA**
**UNITED STATES MAGISTRATE JUDGE**

   Plaintiff Sandra Enid Lopez brought this action under 42 U.S.C. 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Act. In accordance with 28 U.S.C. §636(c), Fed. R. Civ. P. 72, and Local Rule 72.1, consent to the exercise of jurisdiction by a Magistrate Judge has been established.

   Presently before this court are the plaintiff's request for review and the Commissioner's response. For the reasons set forth below, the plaintiff's request for review is DENIED.

I.  FACTUAL AND PROCEDURAL HISTORY

Plaintiff is a forty-six-year old woman born on December 9, 1973. (Tr. 128). Plaintiff had past relevant work as a certified nursing assistant and an order filler. (Tr. 17).

On November 5, 2015, plaintiff filed applications for SSI and DIB. (Tr. 126-141). Plaintiff alleges a disability onset date of June 21, 2013. (Tr 128). Plaintiff's applications were initially denied at the state level on January 11, 2016. (Tr. 72-80). Plaintiff subsequently requested a hearing before an Administrative Law Judge ("ALJ").

On January 3, 2018, ALJ Eric Schwarz held a hearing. (Tr. 24-53). On May 14, 2017, ALJ Schwarz found plaintiff not disabled under the Act from June 21, 2013, the alleged onset date, through the date of the decision. (Tr. 8-23). Plaintiff filed a request for review, and on February 12, 2019, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff appealed that decision to this court.

I.  LEGAL STANDARDS

Upon judicial review, this court's role is to determine whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g); Pierce v. Underwood, 587 U.S. 552 (1988). "Substantial evidence is more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005). It is relevant evidence viewed objectively as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979). In determining whether substantial evidence exists, the

reviewing court may not weigh the evidence or substitute its own conclusion for that of the ALJ. Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002). If the court determines the ALJ's factual findings are supported by substantial evidence, then the court must accept the findings as conclusive. Richardson, 402 U.S. at 390; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. Richardson, 402 U.S. at 401. While the Third Circuit Court of Appeals has made it clear that the ALJ must analyze all relevant evidence in the record and provide an explanation for disregarding evidence, this requirement does not mandate the ALJ "to use particular language or adhere to a particular format in conducting his analysis." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Rather, it is meant "to ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." Id. Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards. Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To establish a disability under the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Sec'y of Health and Human Servs., 841 F.2d 57 (3d Cir. 1988) (quoting Kangas, 823 F.2d at 777); 42 U.S.C. § 423(d)(1) (1982). The claimant satisfies his burden by showing an inability to return to his past relevant work. Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Rossi v. Califano, 602 F.2d 55, 57 (3d Cir. 1979) (citing Baker v. Gardner, 362 F.2d 864 (3d Cir. 1966)). Once this showing is made, the burden of proof shifts to the Commissioner to show that the claimant, given his age,

education, and work experience, has the ability to perform specific jobs that exist in the economy. See 20 C.F.R. § 404.1520; Rossi, 602 F.2d at 57.

As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity if any. If you are doing substantial gainful activity, we will find that you are not disabled.
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled.
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled.
>
> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

I. ADMINISTRATIVE LAW JUDGE'S DECISION

Pursuant to the five-step sequential evaluation process, the ALJ determined the plaintiff had not been under a "disability," as defined by the Act, from June 21, 2013 through the date of the ALJ's decision. (Tr. 19-20). (Tr. 19).

At step one, the ALJ found the plaintiff had not engaged in substantial gainful activity since June 21, 2013. (Tr. 14). At step two, the ALJ found plaintiff's cervical and lumbar

degenerative disc disease is a severe impairment. (Tr. 14). The following summarized medical records pertain to the issues at bar:

Treatment records from HealthWorks Allentown show that plaintiff suffered a work-related injury on March 21, 2013. Plaintiff was reaching overhead, pulling a box and felt pain. She described the pain in her right shoulder and neck at a level 5. (Tr. 291-293). An examination revealed that plaintiff was in no acute distress. She had tenderness to palpation in her right trapezius from the cervical area down to her right shoulder with some spasm and decreased range of motion in all directions due to pain. Plaintiff had good strength, sensation was intact to light touch and she had a good radial pulse on the right side. (Tr. 292). Plaintiff was diagnosed with right trapezius strain. (Tr. 292). At a follow-up appointment on April 3, 2013, plaintiff reported pain at a level 2 after repetitive work. (Tr. 289). On April 10, 2013, plaintiff reported improvement and an examination revealed no tenderness and normal range of motion. (Tr. 287). At a follow-up appointment on April 22, 2013, plaintiff reported pain in both shoulders, with more pain in her left trapezius. (Tr. 285). Examination revealed tenderness in both right and left trapezius with full range of motion. (Tr. 285). Plaintiff was referred to physical therapy. (Tr. 285). On May 29, 2013, plaintiff reported pain at a level 3 across both shoulders extending down the sides of her spine to her lower back. Plaintiff complained that work made the pain worse. (Tr. 277). On examination plaintiff had some tenderness to palpation, range of motion was good and plaintiff could heal to toe walk. (Tr. 277). In June and July 2013, it was recorded that plaintiff received trigger point injections and experienced some relief. Plaintiff reported a pain level of 3. Plaintiff also missed physical therapy appointments due to scheduling conflicts. (Tr. 273-275). In August 2013, plaintiff reported some

5

improvement and a pain level of 1. It was recommended that plaintiff do a trial return to work at full duty and that she continue with therapy. (Tr. 269). On August 21, 2013, Dr. Richard Goy, M.D. indicated that plaintiff's symptoms were subjective with little or no objective findings. Dr. Goy noted that an independent medical examination (IME) report from August 2, 2013 found plaintiff had fully recovered and could resume full duty. It was also noted that plaintiff had a consultation with Dr. Scott Naftulin after being referred by plaintiff's attorney. Dr. Goy opined that it was curious that plaintiff's medical care appears to have been assumed by a lawyer who had referred plaintiff to Dr. Naftulin. (Tr. 267).

Plaintiff received trigger point injections on June 4 and 18, 2013, and July 2, 2013. (Tr. 300-319). On July 2, 2013, it was indicated that no follow-up was scheduled, and plaintiff's exams had been quite benign. (Tr. 301). Plaintiff complained of severe headaches.

On June 7, 2013, a cervical spine x-ray was normal with no acute abnormality or significant degenerative changes. (Tr. 368). An August 2013 MRI of the cervical spine demonstrated mild degenerative changes at C5-6 and a small lateral left disc protrusion at C6-7. An October 2013 MRI of the lumbar spine showed a small central disc protrusion at L5-S1 without significant central canal or neuroforaminal stenosis.

Plaintiff received physical therapy at St. Lukes Physical Therapy from November 21, 2013 to April 11, 2014 and again from December 22, 2015 to July 21, 2016. (Tr. 375-470, 504-563). Plaintiff's discharge indicates that plaintiff reported resolution of headaches and remaining muscular tightness and neck pain. (Tr. 376). It was also indicated that plaintiff was able to return to work. (Tr. 376).

6

Plaintiff treated with Dr. Naftulin at Northeast Rehabilitation Associates. (Tr. 471-484). On January 23, 2014, plaintiff reported her headaches had improved but she had worsening right sided neck pain. (Tr. 473). On physical examination, plaintiff was in mild distress and cervical spinal extension was painfully limited with tenderness in the right mid-to-lower cervical paraspinals. Plaintiff's motor, reflex and sensory testing upper extremities was without focal deficit. Plaintiff had normal gait and station, no focal atrophy, fasciculations, or deformities. (Tr. 474). Plaintiff received a right C4-6 medial branch block using Lidocaine. (Tr. 475). Plaintiff was not seen again for a year and nine months. Plaintiff was seen by Dr. Naftulin on October 26, 2015, with complaints of cervical pain. (Tr. 475). Plaintiff complained of headaches and numbness. On examination, plaintiff's range of motion was full, with the exception of 20% limitation in extension due to pain. There was tenderness of bilateral cervical paraspinals and upper trapezius. Strength was normal and there was absence of atrophy and significant deformity. (Tr. 476).

On December 22, 2015, plaintiff had a consultative examination with Dr. Ziba Monfared, M.D.. She reported lower back pain with left hip radiation and neck pain with pain at 6 or 7/10 on a daily basis. (Tr. 486). Plaintiff reported that she cannot stand at all, is able to walk no more than 10 to 15 minutes, sitting more than 10 to 15 minutes aggravates the pain. Plaintiff reported that she does not use any assistive devices. (Tr. 486). Plaintiff could not remember what pain medications she took. (Tr. 486). Plaintiff also reported that she lives with her family and does the cooking, cleaning, laundry and shopping and has no child-care. Plaintiff showers and dresses herself daily, watches TV, listens to the radio and reads. (Tr. 486-487). Plaintiff appeared to be in acute distress. She had normal gait and could walk on heels and toes

7

without difficulty. Plaintiff had normal stance and needed no help changing for the exam or getting on and off the exam table. Plaintiff was also able to rise from the chair without difficulty. (Tr. 487). Plaintiff displayed negative straight leg raising bilaterally with no evidence of joint deformity, symmetric and equal deep tendon reflexes, no sensory deficits, intact strength in the upper and lower extremities, no muscle atrophy, and intact hand and finger dexterity with full grip strength bilaterally. (Tr. 488).

Dr. Monfared opined that plaintiff is capable of lifting up to 50 pounds occasionally and 20 pounds frequently, carrying up to 20 pounds frequently, sitting for 30 minutes at one time for a total of three hours in an eight-hour workday, standing for 15 minutes at one time for a total of one hour in an eight-hour workday, and walking for 15 to 20 minutes at one time for a total of one hour in an eight-hour workday. Dr. Monfared noted that plaintiff could frequently perform manipulative functions with bilateral upper extremities, frequently operate foot controls with the bilateral lower extremities, and frequently perform postural activities with the exception of occasional crawling. Finally, Dr. Monfared found plaintiff could tolerate frequent exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, humidity and wetness, pulmonary irritants, and vibrations and occasional exposure to temperature extremes. (Tr. 490-495).

Continuing with the five-step sequential evaluation, at step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr.14). At step four, the ALJ found plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except sit or stand at will; no more than

8

routine repetitive tasks; and frequent bilateral reaching, handling, and fingering. (Tr. 14). The ALJ noted that he had considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. Id. Further, the ALJ considered opinion evidence. Id.

The ALJ determined that while plaintiff had medically determinable impairments that could reasonably be expected to cause the alleged symptoms, plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the medical evidence and other evidence in the record. (Tr. 15).

Finally, at step five, the ALJ found that given plaintiff's residual functional capacity, there were jobs that exist in significant numbers in the national economy that plaintiff could perform. (Tr. 18). Thus, the ALJ determined plaintiff had not been under a "disability," as defined in the Act, from June 21, 2013 through May 14, 2018, the date of the ALJ's decision. (Tr. 19).

IV.   DISCUSSION

The Commissioner's findings must be affirmed if they are supported by substantial evidence. 42 U.S.C. 405(g); Richardson, 402 U.S. at 401. The role of this court is to determine whether substantial evidence supports the Commissioner's decision. <u>Williams v. Sullivan</u>, 907 F.2d 1178, 1182 (3d. Cir. 1992). After review of the record, we find plaintiff's request for review should be denied.

A.  <u>Whether the ALJ's Residual Functional Capacity Finding was Supported by Substantial  Evidence.</u>

Plaintiff alleges that her severe neck and back pain are disabling, and that treatment had offered her no relief. See Pl. Brief.

The regulations provide that an ALJ has the final responsibility in determining a claimant's residual functional capacity. 20 C.F.R. 404.1546. The residual functional capacity assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities despite the limitations caused by his or her impairment(s). 20 C.F.R. 404.1545(a); see also Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d. Cir. 2000). The ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p; Mullin v. Apfel, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's residual functional capacity findings must be supported by the medical evidence. Doak v. Heckler, 790 F.2d 26, 29 (3d. Cir. 1986).

The ALJ considered plaintiff's medical records and found that plaintiff has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except sit or stand at will; no more than routine repetitive tasks; and frequent bilateral reaching, handling, and fingering. (Tr. 14).

In determining plaintiff's RFC, the ALJ is only required to include limitations credibly established by medical evidence and not every limitation alleged. Rutherford, 399 F.3d at 554. The ALJ provided a detailed review and summary of plaintiff's medical records, which supports the ALJ's residual functional capacity finding as well as the ALJ's decision not to credit plaintiff's testimony to the extent that testimony is not supported by the record.

The ALJ noted that in March 2013, plaintiff was injured at work and had pain in her shoulder and neck. (Tr. 291-293). An examination revealed that the plaintiff was in no acute distress. She had tenderness to palpation in her right trapezius from the cervical area down to her right shoulder with some spasm and decreased range of motion in all directions due to pain. Plaintiff had good strength, sensation intact to light touch, and good radial pulse on the right side. (Tr. 292). In August 2013, plaintiff reported some improvement and a pain level of 1. It was recommended that plaintiff do a trial return to work at full duty and that she continue with therapy. (Tr. 269). On August 21, 2013, Dr. Richard Goy, M.D. indicated that plaintiff's symptoms were subjective with little or no objective findings. Dr. Goy noted that an independent medical examination (IME) report from August 2, 2013 found plaintiff had fully recovered and could resume full duty. (Tr. 267).

The ALJ also explained that plaintiff's follow-up rehabilitation notes indicate minimal clinical findings. On physical examination, plaintiff was in mild distress and cervical spinal extension was painfully limited with tenderness in the right mid-to-lower cervical paraspinals. Plaintiff's motor, reflex and sensory testing of upper extremities was without focal deficit. Plaintiff had normal gait and station, no focal atrophy, fasciculations, or deformities. (Tr. 474). Plaintiff also had a break in treatment after January 2014 and returned to the rehabilitation specialist in October 2015. At that time, plaintiff's examination was relatively normal with full range of motion, with the exception of 20% limitation in extension due to pain. There was tenderness of bilateral cervical paraspinals and upper trapezius. Strength was normal and there was absence of atrophy or significant deformity. (Tr. 476).

Plaintiff had a consultative examination and reported lower back pain with left hip radiation and neck pain with pain at 6 or 7/10 on a daily basis, and that she cannot stand at all, is able to walk no more than 10 to 15 minutes, sitting more than 10 to 15 minutes aggravates the pain. Plaintiff reported that she does not use any assistive devices. (Tr. 486). The ALJ considered these complaints but noted that plaintiff also reported that she lives with her family and does the cooking, cleaning, laundry and shopping, and has no child-care. Plaintiff showers and dresses herself daily, watches TV, listens to the radio and reads. (Tr. 486-487). Furthermore, on examination, plaintiff had normal gait and could walk on heels and toes without difficulty. Plaintiff had a normal stance and needed no help changing for her exam or getting on and off the exam table. Plaintiff was also able to rise from the chair without difficulty. (Tr. 487). Plaintiff displayed negative straight leg raising bilaterally with no evidence of joint deformity, symmetric and equal deep tendon reflexes, no sensory deficits, intact strength in the upper and lower extremities, no muscle atrophy, and intact hand and finger dexterity with full grip strength bilaterally. (Tr. 488).

The ALJ acknowledges that plaintiff received steroid injections and nerve block injections. However, plaintiff's examinations revealed normal gait, normal muscle strength, normal range of motion, and mild tenderness in the left SI joint, lumbar paraspinal area, thoracic paraspinal area, and moderate tenderness in the right cervical paraspinal area, lumbar paraspinal area and sacral paraspinal area. (Tr. 751).

The ALJ also considered plaintiff's diagnostic testing and noted that results were relatively unremarkable. Plaintiff's cervical spine x-ray was normal with no acute abnormality or significant degenerative changes. (Tr. 368). An MRI of the cervical spine demonstrated mild

degenerative changes at C5-6 and a small lateral left disc protrusion at C6-7, and, an MRI of the lumbar spine showed a small central disc protrusion at L5-S1 without significant central canal or neuroforaminal stenosis. (Tr. 745). Plaintiff's EMG was completely normal. (Tr. 596-598).

Finally, the ALJ considered plaintiff's subjective complaints about her pain and limitations. The ALJ considered plaintiff's complaints and found plaintiff's subjective complaints were not fully supported by the objective medical record discussed immediately above.

An ALJ is empowered to evaluate a claimant's credibility. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir. 1983). Even if an ALJ concludes that a medical impairment exists, which could reasonably cause the symptoms alleged, he must evaluate the intensity and persistence of the symptoms, and the extent to which they affect the claimant's ability to work. 20 CFR § 404.1529(b)-(c). In doing so, the ALJ may consider the internal consistency of the claimant's own statements, the medical evidence, the claimant's medical treatment history, and findings by state agency or other program physicians. 20 C.F.R. § 1529. Deference must be given to the ALJ's determination on issues of credibility so long as the ALJ discusses the issue and the ALJ's finding is supported by substantial evidence. Alvarez v. Sec'y of Health and Human Serv., 549 F. Supp. 897, 899-900 (E.D. Pa. 1982). Therefore, this court will review the ALJ's analysis and the relevant medical records in dispute, but will not re-weigh the evidence or substitute the court's own opinion for that of the ALJ. See Burns v. Barnhart, 312 F.3d at 118.

Third Circuit case law does not dictate that a plaintiff's complaints of pain must be accepted by the ALJ. Rather, an ALJ must consider the statements of a claimant concerning

her symptoms, but the ALJ is not required to credit them. Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir.2011) (citing SSR 96–7p, 20 C.F.R. § 404.1529(a)). It is within the province of the ALJ to evaluate the credibility of a claimant. Van Horn v. Schweiker, 717 F.2d 871, 873 (3d Cir.1983). An ALJ's "findings on the credibility of claimants 'are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility.'" Irelan v. Barnhart, 243 F.Supp.2d 268, 284 (E.D.Pa.2003) (citing Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997)). An ALJ may disregard subjective complaints when contrary evidence exists in the record. Mason v. Shalala, 994 F.2d 1058, 1067–68 (3d Cir.1993). The ALJ must, however, provide his or her reasons for doing so. Burnett, 220 F.3d at 122; Matullo v. Bowen, 926 F.2d 240, 245 (3d Cir.1990) (noting that ALJ may reject claim of disabling pain where he has considered subjective complaints and specified reasons for rejecting claim). Pursuant to C.F.R. § 416.929(c), objective medical evidence can assist the ALJ in making conclusions about plaintiff's pain. However, the ALJ cannot reject plaintiff's complaints simply based on objective medical evidence. Rather, the ALJ must consider other relevant factors in evaluating plaintiff's allegations of pain, including plaintiff's daily activities; the location, duration, frequency, and intensity of plaintiff's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medications plaintiff receives or has received for relief of pain or other symptoms; treatment, other than medications; and any other measures used to relieve pain. 20 C.F.R. § 416.929(c)(3).

The ALJ found that the medical evidence does not corroborate the level and effect of plaintiff's alleged symptoms. The ALJ explained that "the treatment received to date has been

entirely conservative in nature and no treating physician has indicated that [plaintiff] is disabled or even more limited than found [by the ALJ]. In fact, [plaintiff] was released back to full duty work as early as August 2013. Despite claims of severe pain and dysfunction, [plaintiff] has not undergone surgery, wore a brace, used an assistive device for ambulation, or been prescribed narcotic pain medication." (Tr. 16). The ALJ also noted that plaintiff lives with her husband and two daughters, ages 12 and 14. During a typical day, she wakes up early, prays, drives her daughters to school, washes dishes, prays/reads the Word, watches testimonies on her phone, goes to church three times per week, and spends four to five hours a day in bed. (Tr. 15).

The ALJ considered all the evidence of record and supported the decision not to credit plaintiff's subjective complaints to the extent they are not supported by the record.

In determining plaintiff's RFC, the ALJ is only required to include limitations credibly established by medical evidence and not every limitation alleged. Rutherford, 399 F.3d at 554. The ALJ considered all the medical evidence and plaintiff's subjective complaints in formulating the residual functional capacity. The ALJ supported the residual functional capacity with substantial support, thus, plaintiff's request for review is DENIED.

V.  CONCLUSION

AND NOW, this 31st day of March, 2020, for the reasons set forth above, the court finds that the ALJ's decision is supported by substantial evidence. Accordingly, the plaintiff's request for review will be DENIED and DISMISSED. An appropriate order follows.

BY THE COURT:

/S LINDA K. CARACAPPA
LINDA K. CARACAPPA
UNITED STATE MAGISTRATE JUDGE